**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| LADARIUS PHILLIPS, Individually and for Others Similarly Situated,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC | Civil No. ________________<br><br>FLSA Collective Action<br><br>Jury Trial Demanded |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. LaDarius Phillips (Phillips) brings this collective action to recover unpaid wages and other damages from Mercedes-Benz USA, LLC (MBUSA).

2. MBUSA employed Phillips as one of its Hourly Employees (defined below).

3. But MBUSA does not pay Phillips and its other Hourly Employees overtime wages at the required rates for all overtime hours worked.

4. Instead, MBUSA misclassifies Phillips and the other Hourly Employees as independent contractors and pays them according to its "per diem pay scheme."

5. Under its per diem pay scheme, MBUSA pays the Hourly Employees a base hourly rate plus so called "per diems" each pay period.

6. The per diems are not payments made for periods where no work is performed due to vacation, holiday, or illness, nor for expenses incurred, nor are they contributions irrevocably made to a trustee or third person under a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees.

7. Instead, MBUSA pays these per diems as compensation for work performed by its Hourly Employees.

8. Because it is compensation for work, the Fair Labor Standards Act (FLSA) requires MBUSA to include the per diems in calculating the Hourly Employees' regular rates of pay for overtime purposes. *See* 29 U.S.C. § 207(e).

9. But when Phillips and the other Hourly Employees work more than 40 hours in a workweek, MBUSA intentionally excludes the per diems from their regular rates.

10. As a result of MBUSA's per diem pay scheme, Phillips and the other Hourly Employees are not paid overtime based upon their true regular rates of pay.

11. Additionally, MBUSA pays Phillips and the other Hourly Employees shift differentials that it excludes from their regular rates of pay for overtime purposes (MBUSA's "shift differential pay scheme").

12. As a result of MBUSA's per diem pay scheme and shift differential pay scheme, Phillips and the other Hourly Employees are not paid overtime based on their true regular rates of pay.

13. MBUSA's per diem pay scheme and shift differential pay scheme violate the FLSA by depriving Phillips and the other Hourly Employees of overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## Jurisdiction and Venue

14. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15. This Court has general personal jurisdiction over MBUSA with respect to this action because MBUSA maintains its principal place of business in Georgia.

16. Venue is proper because MBUSA maintains its principal office in Sandy Springs, Georgia, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## Parties

17. MBUSA employed Phillips as an automotive technician II from approximately July 2022 until July 2024.

18. MBUSA paid Phillips under its per diem pay scheme and shift differential pay scheme throughout his employment.

19. Phillips brings this collective action on behalf of himself and similarly situated MBUSA employees.

20. The putative FLSA collective of "Hourly Employees" is defined as:

> **All hourly employees who worked for MBUSA who were paid a per diem and/or shift differential during the past 3 years through final resolution of this action.**

21. MBUSA is a Delaware limited liability company.

22. MBUSA maintains its principal place of business in Sandy Springs, Georgia.

23. MBUSA can be served with process through its registered agent: **The Corporation Company, 410 Peachtree Parkway, Suite 4245, Cumming, Georgia 30041**.

## FLSA COVERAGE

24. At all relevant times, MBUSA was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, MBUSA was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, MBUSA was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the

FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cell phones, computers, tools, and personal protective equipment, that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

27. At all relevant times, MBUSA has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28. At all relevant times, Phillips and the other Hourly Employees were MBUSA's "employees" within the meaning of the FLSA, despite MBUSA's misclassification of the Hourly Employees. 29 U.S.C. § 203(e).

29. At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

30. MBUSA touts itself as "one of the world's most successful automotive companies," that claims "our employees and communities are at the heart of everything we do."[1]

31. To meet its business objectives, MBUSA employs workers, including Phillips and the other Hourly Employees, to assemble its automobiles.

32. But MBUSA misclassifies Phillips and the other Hourly Employees

---

[1] https://group.mercedes-benz.com/company/ *and* https://www.mbusa.com/en/about-us (last visited October 3, 2025).

as independent contractors and fails to pay them overtime wages of at least 1.5 times their true regular rates of pay for hours worked in excess of 40 in a workweek.

33. MBUSA hires and treats Phillips and the other Hourly Employees just like other regular employees.

34. Indeed, MBUSA classifies workers as W-2 employees who perform the same jobs as the Hourly Employees, in the same facilities, assembling the same cars, under the same supervision, pursuant to the same policies and procedures.[2]

35. And despite misclassifying Phillips and the other Hourly Employees as independent contractors, MBUSA controls all meaningful aspects of their employment.

36. MBUSA controls Phillips's and the other Hourly Employees' rates and methods of pay.

37. MBUSA controls Phillips's and the other Hourly Employees' schedules and assignments.

38. MBUSA requires Phillips and the other Hourly Employees to follow MBUSA's policies, procedures, plans, protocols, and specifications.

39. Phillips's and the other Hourly Employees' work must strictly adhere to the quality standards put in place by MBUSA.

---

[2] *See, e.g.*, https://jobs.mercedes-benz.com/en/automotive-repair-technician-53898-MER0002DHM (advertising a job for an automotive repair technician position) (last visited October 3, 2025).

40. Phillips and the other Hourly Employees take direction from and are supervised by MBUSA personnel.

41. Indeed, the Hourly Employees' daily and weekly job duties are routine and largely governed by standardized plans, procedures, and/or checklists created and implemented by MBUSA.

42. Virtually every job function is predetermined by MBUSA, including the tools and equipment used in MBUSA's facilities and the timetable of work.

43. Without the job Phillips and the other Hourly Employees perform, MBUSA would not be able to complete its business objective of assembling and quality checking automobiles.

44. The work Phillips and the other Hourly Employees perform is therefore an essential and integral part of MBUSA's core automobile manufacturing business.

45. Phillips and the other Hourly Employees are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their jobs.

46. Phillips and the other Hourly Employees rely on MBUSA for work and wages.

47. Phillips's and the other Hourly Employees' opportunities for profit or loss (to the extent it exists at all) are limited to the wages MBUSA provides them.

48. Phillips and the other Hourly Employees cannot subcontract out the work they are assigned by MBUSA.

49. Phillips and the other Hourly Employees do not substantially invest in the tools or equipment required to complete the job duties MBUSA assigns them.

50. Rather, MBUSA incurs the large-scale business and operating expenses like marketing, real estate and facilities, manufacturing equipment, PPE tools, and automotive materials.

51. MBUSA sets Phillips's and the other Hourly Employees' work schedules, which effectively prohibits them from working other jobs while employed by MBUSA.

52. MBUSA maintains control, oversight, and direction of Phillips and the other Hourly Employees, including, but not limited to, hiring, firing, disciplining, safety rules, manufacturing procedures, and other employment practices.

53. In sum, as a matter of economic reality, Phillips and the other Hourly Employees are MBUSA's employees.

54. MBUSA pays Phillips and the other Hourly Employees by the hour.

55. Phillips and the other Hourly Employees regularly work more than 40 hours a workweek.

56. But MBUSA does not pay its Hourly Employees overtime at the required rates.

57. Instead, MBUSA intentionally excludes "per diem" wages when calculating its Hourly Employees' regular rates of pay for overtime purposes.

58. The per diem pay does not fall under any exclusion for the purpose of calculating the regular rate under the FLSA. *See* 29 U.S.C § 207(e).

59. The per diems are not payments made for periods where no work is performed due to vacation, holiday, or illness, or for expenses incurred, or for retirement, life, accident, or health insurance or similar benefits for employees.

60. Instead, MBUSA pays these per diems as compensation for work.

61. Until approximately February 2024, MBUSA labeled approximately $1,200 of Phillips's pay as per diem (when he worked his full schedule).

62. MBUSA did not pay this per diem to Phillips and other Hourly Employees as a reasonable estimate of the business expenses incurred by these employees for MBUSA's benefit.

63. Rather, MBUSA based the per diem it paid to Phillips and other Hourly Employees on the business plans and needs of its manufacturing plant.

64. Indeed, in February 2024, MBUSA slashed the per diem wages by more than 50% to $470 a week based on its business needs.

65. It defies credulity that a "per diem" that could be cut by more than half without any demonstrable change in employee expenses, and despite exceptionally

high inflation,[3] reflects a good faith effort to reasonably approximate employees' expenses.

66. In fact, the per diem MBUSA pays to Phillips and other Hourly Employees is not based on any attempt to approximate the expenses these employees incur.

67. The per diems are not related to expenses these employees incur at all, but rather, are paid at a uniform rate that is not tailored to individual expenses or time away from home.

68. The per diem is simply remuneration provided by MBUSA to its Hourly Employees for work these employees perform.

69. Even if their job titles and job duties differ somewhat, Phillips and the other Hourly Employees are all subject to the same or similar unlawful pay practice: MBUSA's per diem pay scheme.

70. For example, MBUSA employed Phillips as an automotive technician II in its Vance, Alabama manufacturing facility from approximately July 2022 until July 2024.

71. He was "staffed" to MBUSA's manufacturing plant by a staffing agency called Maswer USA.

---

[3] https://www.cbo.gov/system/files/2024-09/60480-Inflation.pdf (last visited October 3, 2025).

72. Phillips's primary job duties included performing electrical fixes, repairs, and reworks on cars coming off the assembly line, testing to ensure faults were resolved, and sending the car on to the next step in the manufacturing process, in accordance with MBUSA's procedures and specifications.

73. MBUSA paid Phillips under its per diem pay scheme throughout his employment.

74. Phillips regularly worked more than 40 hours in a workweek.

75. Indeed, Phillips regularly worked approximately 10 hours a day and 6 days a week (60 hours a workweek).

76. MBUSA knew Phillips worked these hours because it required Phillips to report his "on the clock" work hours using the time tracking system MBUSA selected and utilized.

77. Despite knowing Phillips regularly worked overtime, MBUSA did not pay him overtime at the required premium rate.

78. Instead, MBUSA paid Phillips under its per diem pay scheme.

79. That meant MBUSA intentionally excluded the pay it labeled "per diem" from the calculation of Phillips's regular rate of pay.

80. As a result, MBUSA failed to pay Phillips overtime at the required premium rate—based on all remuneration—in violation of the FLSA.

81. MBUSA pays the other Hourly Employees according to the same per diem pay scheme it imposed on Phillips.

82. Like Phillips, MBUSA pays its other Hourly Employees by the hour.

83. And like Phillips, MBUSA requires its other Hourly Employees to report their "on the clock" hours worked.

84. Thus, just as MBUSA maintains records of the "on the clock" hours Phillips works, it also maintains records of the "on the clock" hours the other Hourly Employees work.

85. MBUSA's records show the Hourly Employees regularly work more than 40 hours in a workweek.

86. Every Hourly Employee covered by this lawsuit worked more than 40 hours in at least one workweek during the last 3 years.

87. Like Phillips, the other Hourly Employees typically work about 10 hours a day and 6 days a week (60 hours a workweek).

88. Despite knowing its Hourly Employees regularly work overtime, MBUSA does not pay them overtime wages at the required premium rate.

89. Instead, MBUSA paid all the Hourly Employees under its per diem pay scheme.

90. MBUSA cut the per diem wages it paid the Hourly Employees by more than half from approximately $1,200 to just $470 a workweek for not only

employees "staffed" by Maswer USA, but also for employees "staffed" by other staffing providers to MBUSA.

91. Additionally, MBUSA paid Phillips and the other Hourly Employees under its shift differential pay scheme.

92. Specifically, MBUSA paid them approximately $1.40 an hour in addition to their base hourly rates of pay for working certain hours designated by MBUSA.

93. But under its shift differential pay scheme, MBUSA excludes these hourly shift differentials from Phillips's and the other Hourly Employees' regular rates of pay for overtime purposes.

94. As a result, MBUSA violates the FLSA by failing to pay Phillips and its other Hourly Employees overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## Collective Action Allegations

95. Phillips brings his claims on behalf of himself and the other Hourly Employees as a collective action under the FLSA.

96. MBUSA violated, and is violating, the FLSA by failing to pay the Hourly Employees overtime wages at the required premium rates for all hours worked over 40 in a workweek.

97. Like Phillips, the other Hourly Employees are victimized by MBUSA's per diem pay scheme and/or shift differential pay scheme.

98. Other Hourly Employees worked with Phillips and indicated they were paid in the same manner, performed similar work, and were subject to MBUSA's same or similar per diem pay scheme and/or shift differential pay scheme.

99. Based on his experience with MBUSA, Phillips is aware MBUSA's per diem pay scheme and shift differential pay scheme were imposed on other Hourly Employees.

100. The Hourly Employees are similarly situated in the most relevant respects.

101. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required rates.

102. Therefore, the specific job titles or locations of the Hourly Employees do not prevent collective treatment.

103. Rather, the Hourly Employees are held together by MBUSA's per diem pay scheme and shift differential pay scheme, which systematically deprive Phillips and the other Hourly Employees of premium overtime wages based on their true regular rates of pay for all hours worked over 40 in a workweek.

104. MBUSA's failure to pay these employees overtime wages at the required premium rates required by the FLSA results from generally applicable, systematic policies and practices that are not dependent on the personal circumstances of the Hourly Employees.

105. MBUSA's records reflect the number of hours the Hourly Employees worked "on the clock" each week.

106. MBUSA's records also show it paid the Hourly Employees per diems and shift differentials each workweek.

107. And MBUSA's records show that it excluded the Hourly Employees' per diems when calculating their regular rates of pay for overtime purposes.

108. MBUSA's records likewise show that it excluded the Hourly Employees' shift differentials when calculating their regular rates of pay for overtime purposes.

109. The back wages owed to Phillips and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

110. Even if the issue of damages were somewhat individual in character, the damages can be calculated objectively by reference to MBUSA's records.

111. Therefore, the issue of damages does not preclude collective treatment.

112. Phillips's experiences are typical of the experiences of the other Hourly Employees.

113. Phillips has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

114. Phillips has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal law.

115. Phillips and his counsel will fairly and adequately protect the interests of the Hourly Employees.

116. Phillips retained counsel with significant experience in handling complex collective action litigation.

117. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and MBUSA will reap the unjust benefits of violating the FLSA.

118. Further, even if some of the Hourly Employees could afford individual litigation against MBUSA, it would be unduly burdensome to the judicial system.

119. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and MBUSA.

120. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

121. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

122. Among the common questions of law and fact are:

a. Did MBUSA pay per diems to its Hourly Employees;

b. Did MBUSA pay the per diems as remuneration for work;

c. Did MBUSA pay shift differentials to its Hourly Employees;

d. Did MBUSA's failure to include the per diems and/or shift differentials when calculating its Hourly Employees' regular rates of pay violate the FLSA;

e. Was MBUSA's decision not to pay the Hourly Employees overtime wages at the required premium rates made in good faith; and

f. Were MBUSA's violations willful.

123. Phillips and the other Hourly Employees he seeks to represent have suffered, and will continue to suffer, damage from MBUSA's per diem pay scheme.

124. The similarly situated Hourly Employees who have been denied overtime compensation would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

125. The Hourly Employees are known to MBUSA and can be readily identified through MBUSA's business and personnel records.

## MBUSA's Violations Were Willful

126. MBUSA knew it controlled Phillips's and the other Hourly Employees' rates of pay.

127. MBUSA knew it controlled Phillips's and the other Hourly Employees' method of pay.

128. MBUSA knew it controlled Phillips's and the other Hourly Employees' work schedules.

129. MBUSA knew it prohibited Phillips and the other Hourly Employees from straying from MBUSA's procedures, specifications, and other protocols in performing their job duties.

130. MBUSA knew it did not require Phillips and the other Hourly Employees to possess any specialized skillset other than that maintained by all workers in their respective job positions.

131. MBUSA knew Phillips's and the other Hourly Employees' work was integral to MBUSA's core business operations.

132. MBUSA knew its investment in the tools and equipment necessary for Phillips and the other Hourly Employees to perform their jobs substantially outweighed any investment made by these workers.

133. MBUSA knew Phillips and the other Hourly Employees relied on it for work and compensation.

134. MBUSA knew it controlled Phillips's and the other Hourly Employees' opportunity for profit or loss and that it limited their opportunity for profit or loss to the wages MBUSA paid them.

135. Thus, MBUSA knew, should have known, or recklessly disregarded whether, as a matter of economic reality, Phillips and the other Hourly Employees were MBUSA's employees.

136. Nonetheless, MBUSA misclassified Phillips and the other Hourly Employees as independent contractors.

137. MBUSA's misclassification of Phillips and the other Hourly Employees as independent contractors was designed to insulate it from its FLSA violations.

138. MBUSA's misclassification of Phillips and the other Hourly Employees as independent contractors was neither reasonable, nor was its decision to misclassify Phillips and the other Hourly Employees as independent contractors made in good faith.

139. MBUSA knew it was subject to the FLSA's overtime provisions.

140. MBUSA knew the FLSA required it to pay non-exempt employees, including Phillips and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay (based on all remuneration) for all hours worked after 40 in a workweek.

141. MBUSA knew Phillips and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years.

142. MBUSA knew Phillips and the Hourly Employees are entitled to overtime when they work more than 40 hours in a week.

143. MBUSA knew it paid Phillips and the other Hourly Employees by the hour.

144. MBUSA knew it paid Phillips and the other Hourly Employees base hourly rates plus per diems and shift differentials.

145. MBUSA knew all its Hourly Employees' pay (including their per diems and shift differentials) was remuneration for work (and, as such, should be included for the purpose of calculating overtime under the FLSA).

146. And MBUSA agreed to pay Phillips and the other Hourly Employees at the overtime rates required by law.

147. Nonetheless, MBUSA intentionally excluded per diems and shift differentials in calculating the Hourly Employees' regular rates of pay for overtime purposes.

148. In other words, MBUSA knew, should have known, or recklessly disregarded whether it failed to pay Phillips and the other Hourly Employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for their hours worked over 40 in a workweek.

149. MBUSA's decision to exclude Phillips's and the other Hourly Employees' per diems from their regular rates of pay for the purpose of calculating overtime was neither reasonable, nor was it made in good faith.

150. MBUSA's failure to pay Phillips and the other Hourly Employees overtime wages at the required premium rates was neither reasonable, nor was its decision not to pay them overtime wages at the required premium rates made in good faith.

151. MBUSA knew, should have known, or recklessly disregarded whether its conduct violated the FLSA.

152. MBUSA knowingly, willfully, and/or in reckless disregard carried out its illegal per diem pay scheme that systematically deprived Phillips and the other Hourly Employees of required overtime premium for hours worked in excess of 40 a workweek.

## CAUSE OF ACTION

## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA (FLSA COLLECTIVE)

153. Phillips brings his FLSA claims as a collective action on behalf of himself and the other Hourly Employees.

154. MBUSA violated, and is violating, the FLSA by employing non-exempt employees (the Hourly Employees) in a covered enterprise for workweeks

longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 a workweek.

155. MBUSA's unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

156. Accordingly, the Hourly Employees are entitled to recover the difference between the wages paid and the wages actually earned, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

157. Phillips demands a trial by jury on all counts.

## RELIEF SOUGHT

Phillips, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order allowing this action to proceed as a collective action under the FLSA and directing notice be sent to all the Hourly Employees allowing them to join this collective action by filing a written notice of consent;

b. An Order pursuant to Section 16(b) of the FLSA finding MBUSA liable for unpaid overtime wages due to Phillips and

the Hourly Employees, plus liquidated damages in an amount equal to their unpaid wages;

c. A Judgment awarding Phillips and the Hourly Employees all unpaid wages and other damages available under the FLSA;

d. An Order awarding attorney's fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

Dated: October 9, 2025

Respectfully submitted,

**MORGAN & MORGAN, PA**

By: */s/ Jeremy Stephens*
Jeremy Stephens
GA Bar No. 702063
191 Peachtree Street, NE
Suite 4200
P.O. Box 57007
Atlanta, Georgia 30303-1007
Tel: (404) 965-1682
jstephens@forthepeople.com

C. Ryan Morgan
GA Bar No. 711884
20 N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Tel: (407) 420-1414
rmorgan@forthepeople.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

**Pro hac vice applications*

*forthcoming*

**ATTORNEYS FOR PHILLIPS & THE HOURLY EMPLOYEES**